UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X
CHARLES L. DECESARE,

        Plaintiff,      Civil Action No.
                 12 Civ. 7162 (KMK)
  -against-

THE AETNA LIFE INSURANCE CO. and
THE DRESS BARN LONG TERM
DISABILITY PLAN,
        Defendants.
--------------------------------------------------------------X


**PLAINIFF'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO COMPEL DISCOVERY**


LAW OFFICE OF BARBARA A. MATARAZZO
Attorneys for Plaintiff, Charles DeCesare
1025 Westchester Avenue – Ste. 402
White Plains, New York 10604
(914) 345-8088
bamatarazzo@gmail.com

1

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

DISCOVERY REQUESTS AND RESPONSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

*Cases:* *Page*

*Allison v. First Unum Life Ins. Co.,* 2005 U.S. Dist. LEXIS 3465 (E.D.N.Y. 2005) . . . . . . . . 12

*Anderson v. Sotheby's Inc. Severance Plan,* 2005 U.S. Dist. LEXIS 9033,
*16-17 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Asuncion v. Met Life,* 493 F. Supp.2d 716 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Beckford v. Gross,* 3 Misc.3d 638, 774 N.Y.S.2d 316 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Burgio v. Prudential Life Ins. Co.,* 253 FRD 219 (E.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . 10

*Burgio v. Prudential Life Ins. Co.,* 2009 WL 3128008 (E.D.NY.) . . . . . . . . . . . . . . . . . . . . . 11

*Grossman v.  Emergency Cesspool and Sewer Cleaners Inc.,*
162 Misc.2d 440, 441, 617 N.Y.S.2d 422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hamill v. Prudential Ins. Co.* 2013 WL 27548 (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . 10

*Kagen v. Unum Provident,* 2009 WL 3486938 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . 9

*Little v. BlueCross,* 72 A.D.2d 200, 203, 424 N.Y.S. 2nd 553 . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McDonnel v. First Unum Life Ins. Co.,* 2011 WL 5301588 (S.D.N.Y. 2011) . . . . . . . . . . . . . . 9

(*Met. Life Ins. Co. v. Glenn,* 554 U.S. 105, at 114, 128 S.Ct. 2343,
171 L.Ed.2d 299 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Miller v. United Welfare Fund,* 72 F.3d 1066 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Mitchell v. First Reliance Standard Life Ins. Co.,* 237 F.R.D. 50 (S.D.N.Y. 2006) . . . . . . . . . . 8

*Nagele v. Electronic Data Systems Corp.,* 193 F.R.D. 94 (W.D.N.Y. 2000) . . . . . . . . . . . . . . . 9

*Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 389 (3d. Cir. 2000) . . . . . . . . . . . . . . 12

*Samedy v. First UNUM Life Ins. Co.,* 2006 U.S. Dist. LEXIS 13375 (E.D.N.Y. 2006) . . . . . . . 10

*Sheehan v. Met Life*, 2002 U.S. Dist. LEXIS 11798 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . 10

*Trussel v. Cigna Life Ins. Co. of N.Y.,* 552 F. Supp.2d 387 (S.D.N.Y. 2008) . . . . . . . . . . . . 10,11

*Venigalla v. Penn Neutral Ins. Co.*, 130 A.D. 2nd 974, 515, N.Y. Supp.2d 939 (4th Dept. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

RULES
Rule 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,10

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this motion seeking to compel Defendant to Supplement its Responses to Plaintiff's Rule 34 Request for Production of Documents and Plaintiff's Rule 33 Set of Interrogatories.    Specifically, Plaintiff seeks the documents requested in its Rule 34 Request for Production of Documents (**Exhibit D** to the Barbara A. Matarazzo Declaration):

<u>Request #2</u>:    A complete copy of the Defendant's underwriting file regarding the placement of this insurance policy including the underwriting guidelines in place regarding policy terms that are relied on by Defendant in its Affirmative Defenses, including "reasonable occupation", "performing any gainful occupation".

The Plaintiff seeks the notes, reports and/or e-mails, memoranda prepared by the Research Consultant Group that issued the October 20, 2011 Surveillance Report on the surveillance tape, to Aetna's claim analysis and/or to Defendant's attorneys.  This Report is not just a recitation of observances, but an editorialization of what the consultant observed with the conclusions that the Plaintiff "did not show any signs of injury".  The Court in *Beckford v. Gross*, 3 Misc.3d 638, 774 N.Y.S.2d 316 (2004) compelled Defendant to produce to Plaintiff a copy of all notes, reports an memoranda prepared by the investigators who took the surveillance videotape of plaintiff, unless the material was privileged.  The Court reasoned that disclosure was required to allow the plaintiff to discover if the tape had been distorted, was missing sections, and as required by a sense of fairness. The Court rejected the *Grossman v. Emergency Cesspool and Sewer Cleaners Inc.,* 162 Misc.2d 440, 441, 617 N.Y.S.2d 422 standard of requiring Plaintiff to show a substantial need or an due hardship, and ordered their disclosure.

Request#10:   A copy of the complete file of Dr. Swotinsky with regard to evaluation of the Plaintiff, including, but not limited to, interview sheets, notes, reports, medical tests and results, whether or not Aetna reviewed them in making tis determination on Plaintiff's claims.

Request#11:   A copy of the complete file of Dr. Garvey with regard to evaluation of the Plaintiff, including, but not limited to, interview sheets, notes, reports, medical tests and results, whether or not Aetna reviewed them in making tis determination on Plaintiff's claims.

Plaintiff also seeks substantive responses to the following Rule 33 Interrogatories (**Exhibit F** to the Barbara A. Matarazzo Declaration):

Interrog. #1:   Identify the names of all person with information, or knowledge concerning ... Defendant's allegations in its Third ..., Fourth ..., Fifth..., Seventh..., Eighth ..., Ninth ..., Tenth ..., and Eleventh Affirmative Defenses ... .

Plaintiff is entitled to know who Defendant relies on and who Defendant claims has knowledge to support its affirmative defenses. Defendant's objection that this information is "not relevant", "not likely to lead to the discovery of admissible evidence concerning the issues" ..., and that the Plaintiff should "refer...to the Administrative Record" for its Answer are incorrect and improper.

Interrog. #2:   Identify the names, addresses of fact witnesses you intend to call at trial, including the subject matter upon which the witness(es) are expected to testify.

Defendant's refusal to respond on the basis that "this case should be resolved by dispositive motions or a "paper trial" by the court", and that the "names [are] included in the Administrative Record", are not proper.  Plaintiff should not be left to speculate which witness listed in defendant's production of documents Defendant will rely on at trial to prove its Affirmative Defenses.

Plaintiff also seeks to conduct a deposition of Terri Kili, one of the people on the Committee responsible for the final claim decision upholding the termination of Plaintiff's Long Term Disability Benefits and a Rule 30(b)(6) deposition[1] of Tim Mitton (Seneca Disability Benefit Manager), or Julia Bell (Senior Appeals Specialist for Aetna). Since the parties are briefing the issue of entitlement to discovery beyond what has been produced in compliance with Your Honor's earlier directive, it is now appropriate to address the issue of depositions.

## FACTUAL BACKGROUND

Plaintiff was an employee of The Dress Barn as a Creative Director of Marketing for in store visuals and design. He became disabled in March 30, 2009. His disability coverage through Aetna contains an own occupation definition of disability; whether he is unable to perform the duties of his occupation.

The definition of disability within the policy reads as follows:

Test of Disability – From the date that you first become disabled and until monthly benefits are payable for 24 months, you will be deemed to be disabled on any day, if:

> You are not able to perform the **Material duties** of your **own occupation** solely because of: Disease or injury; and your work earnings are 80% or less of your **adjusted pre-disability earnings**.
>
> After the first 24 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any **reasonable occupation** solely because of: disease; or **injury**.

(See **Exhibit G** attached to the Barbara A. Matarazzo Declaration)

---

[1] As indicated at the Initial Conference, Plaintiff is also seeking to compel Defendant to produce the files, notes, medical records, correspondence by Defendant of the doctors who examined Plaintiff and/or reviewed his medical records and rendered opinions or, in the alternative, serve subpoenas.

On or about March 30, 2009, during the period within which Plaintiff's insurance coverage was in effect, and while Plaintiff was an eligible employee, Plaintiff became disabled within the meaning and pursuant to the terms of this insurance coverage. Plaintiff's disability is the result of Mr. DeCesare's back conditions, the loss of strength in both knees, torn meniscus, degenerative end plate changes, spinal stenosis, as well as Mr. DeCesare's dependence on opioid narcotic mediations in an attempt to control the pain that contribute to Mr. DeCesare's long term disability. Mr. DeCesare is incapable of performing work requirements for even a sedentary physical demand occupation on a part or full-time basis, based upon the following cognitive test results:

- The 5/17/10 Report of Dr. Russell Weinstein, Bd Cert. Radiologist at St. Anthony Comm Hospital. The findings indicate:
"spurring of the tibial spines", "osteophyte formation at the lateral and medical femeral condytes and the medial and lateral plateaus", "joint effusion", "tear of the posterior horn of the medial meniscus"
- The 3/30/09 Report of Dr. Reginald Denis of St. Anthony Comm. Hosp, MRI Findings indicate:
"Type 1 degenerative endplate change involving L4-5 level with mixed type 1 and type
2 degenerative endplate changes involving L4-5 level", "disc desication and disc space narrowing at every level"; There is "mild disc bulging" and "facet hypertrophy" with stenosis at L1-2, 2-3, 3-4, 4-5 (multilevel degenerative changes, worse at L4-5, and to a lesser degree L3-4)"
- The 2/1/9/08 Report of Dr. Bruce Campbell, Bd Certified Radiologist at St. Anthony Comm. Hosp., MRI L Knee Findings:
  Moderate medical meniscus horizontal tear that disrupts the inferior articular surface; mild displacement of the peripheral fragment with respect to the remainder of the meniscus, extensive apical and undersurface tear of the posterior horn extends into and towards the posterior horn attachment; superficial prepatellarbursitis.
- Primary Diagnosis-Lumbar spine stenosis
- Secondary Diagnosis – Osteoarthritis of knees
- Loss of strength in legs due to torn meniscus

Aetna accepted liability of Plaintiff's claim, with the disability commencement date of March 30, 2009. Benefits were paid (and his other attendant benefits, including health insurance

and life insurance were continued), through and until September 29, 2011. (See **Exhibits I, K, M and N** attached to the Barbara A. Matarazzo Declaration). At that time, Plaintiff's eligibility for other insurance benefits, with substantial financial implications to both Plaintiff and Aetna, and which were tied to his continued eligibility for disability insurance benefits, were terminated as well.

Despite his age at the time of his disability, Plaintiff was awarded Social Security disability benefits, which found him to be disabled not only from his own occupation, but from any occupation in the economy due to his physical limitations.  (See **Exhibit N** attached to the Barbara A. Matarazzo Declaration). Aetna was able to secure an offset of its financial liability to Plaintiff as a result of this determination.

The purported bases upon which Plaintiff's Long Term Disability claim was terminated include results of surveillance, (See **Exhibit U** attached to the Barbara A. Matarazzo Declaration) an addendum report from Dr. Garvey who examined Plaintiff, originally found him disabled and later revised her opinion, (See **Exhibit X** attached to Barbara A. Matarazzo Declaration), and a paper review of medical records from doctors hired by Aetna.

Aetna verified that Charles DeCesare met the definition of "Total Long Term Disability", as per Aetna's letter of December 22, 2009, (See **Exhibit M** attached to the Barbara A. Matarazzo Declaration) which status was confirmed and continued until September 29, 2011, the date of the IME and 1 day of the surveillance video.

Dr. Swotinsky's conclusion that Mr. DeCesare's "spinal stenosis", although "limits him to some extent", "is not completely disabling for the SSA criteria", is inaccurate, as the SSA criteria is for a sedentary job, not the strenuous job that Mr. DeCesare was engaged in.  Dr. Swotinsky concludes that Mr. DeCesare is capable of "at least a sedentary work capacity." (See

**Exhibit X**). It can be seen from the job description of Mr. DeCesare. (See **Exhibit J** attached to Barbara A. Matarazzo Declaration), that his job was not a sedentary work capacity job. Mr. DeCesare's job at the time of his disability was as a creative directive of marketing for in store visuals and design, not a light physical demand occupation. The physical demands of creative directive include ability to stand and walk for long periods of time, carrying, pushing, pulling, stretching, reaching, twisting, bending 25% of the time, climbing ladder 10% of the time, lifting 20 to 40 lbs. at times repetitive 20% of the time, travel over 50% driving and air travel, sitting 20% of the time, setting up stores with heavy fixtures to show prototypes, stage set ups, hanging postures, dimensional objects, including while on ladders.

This is contrary to the mischaracterization of "light work" description in Aetna's denial letter of which misrepresents that Mr. DeCesare's job only required, "weight lifted may be only a negligible amount, sitting most of the time, pushing or pulling material whose weight is negligible". (See **Exhibit X** attached to Barbara A. Matarazzo Declaration).

Aetna correctly noted in the denial letter that, "the constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is, physically demanding of a worker, even though the amount of force exerted is negligible". Nevertheless, Aetna did not take this into consideration in its evaluation of Mr. DeCesare's total disability.

Thus, the vocational review conducted by Laurie Karickhoff on December 28, 2011, which concluded that Mr. DeCesare's position of Creative Director of marketing on a full-time basis is a "light, physical demand capacity", is erroneous. (See **Exhibit X** attached to Barbara A. Matarazzo Declaration).

The policy issued to Mr. DeCesare does not define "reasonable occupation". As such, Mr. DeCesare is entitled to expect that an interpretation of the policy term will be strongly

construed against the insurer, as drafter, and liberally in favor of the insured. (see *Little v. BlueCross*, 72 A.D.2d 200, 203, 424 N.Y.S. 2nd 553). This rule is enforced even more strictly when the language at issue purports to limit the company's liability (see *Venigalla v. Penn Neutral Ins. Co.*, 130 A.D. 2nd 974, 515, N.Y. Supp.2d 939 (4th Dept. 1987)). In that regard, the Plaintiff requests in discovery the underwriting guidelines specifically seeking any underwriting guideline definitions of "reasonable occupation", and what the underwriting file contains regarding Mr. DeCesare's representation and Aetna's understanding of the physical demands of Mr. DeCesare's job; whether "light physical demand", how much bending, lifting, driving, carrying, pushing, walking, etc.

## LEGAL ARGUMENT

Plaintiff's position is that additional discovery is warranted in this case, notwithstanding the fact that it is an ERISA disability benefits case. Initially, it must be noted that nowhere within the Federal Rules of Civil Procedure or within the ERISA statute is discovery foreclosed in anyway. Thus, it is solely a result of judicial determination that challenges to litigation seeking discovery in ERISA disability cases have been supported.

One of the Second Circuit's most recent cases, *Mitchell v. First Reliance Standard Life Ins. Co.*, 237 F.R.D. 50 (S.D.N.Y. 2006), analyzes the nature and scope of discovery in this type of claim. In *Mitchell*, it was determined that Plaintiff was entitled to a full panoply of discovery. In that case, as here, Defendant sought to restrict discovery production, primarily upon the basis that the Court's review of the action was limited to the administrative record.

Significantly, the Mitchell Court held that regardless of the standard of review, discovery was permissible, including depositions. The Court cited *Miller v. United Welfare Fund,* 72 F.3d

1066 (2d Cir. 1995), as well as *Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94 (W.D.N.Y. 2000). *Nagele* represents one of the most comprehensive analyses of these issues, and supports Plaintiff's position that discovery beyond the exchange of the administrative record is proper.

Thus, the categories which are appropriate for discovery, regardless of the standard of review, are as follows:

- The exact nature of the information considered by the fiduciary in making its decision;

- Whether the fiduciary was competent to evaluate the information in the administrative record;

- How the fiduciary reached its decisions; and

- Whether, given the nature of the information in the record, in was incumbent upon the fiduciary to seek outside technical assistance in reaching a "full and fair review" of the claim.

Discovery as to the issue of the influence of Aetna's conflict of interest upon its handling of Plaintiff's claim is also relevant and appropriate. See *Kagen v. Unum Provident,* 2009 WL 3486938 (S.D.N.Y. 2009) (Court directed *Unum Provident* to respond to Plaintiff's interrogatories seeking information regarding a conflict of intent, including Defendant's doctors, relationship with Defendant, frequency of consultation for Defendant, frequency of findings of disability, compensation received for such findings, actions of the Defendant that may suggest a conflict of interest, compensation received by the doctors from Defendant, and that Defendant produce a 30(b)(6) witness for deposition, and respond to questions at that deposition regarding issues raised in the interrogatories; *McDonnel v. First Unum Life Ins. Co.*, 2011 WL 5301588 (S.D.N.Y. 2011) (Court held, "In situation where the plan administrator is both the decider and

the payor, the Supreme Court has held that the administrator operates under a conflict of interest ([*Met. Life Ins. Co. v.*] *Glenn*, 554 U.S. 105, at 114, [128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)]. Where the issue is a potential conflict of interest, as opposed to challenging the reasonableness of the decision, the district court's review is not confined solely to the administrative record.  See *Trussel* [*v. Cigna Life Ins. Co. of NY*] 552 F.Supp 2d 387, at 390 [(S.D.N.Y.)].''); *Sheehan v. Met Life*, 2002 U.S. Dist. LEXIS 11798 (S.D.N.Y. 2002); *Samedy v. First UNUM Life Ins. Co.*, 2006 U.S. Dist. LEXIS 13375 (E.D.N.Y. 2006); *Asuncion v. Met Life,*  493 F. Supp.2d 716 (S.D.N.Y. 2007)(court directed both Rule 30(b)(6) deposition and claim handling deposition, compelled production of contract with medical consultant and compelled production of materials alleged to be attorney-client).

Plaintiff recognizes that some Second Circuit district courts have required a showing of "good cause" prior to securing discovery.  (see *Burgio v. Prudential Life Ins. Co.*, 253 FRD 219 (E.D.N.Y. 2008); *Hamill v. Prudential Ins. Co.* 2013 WL 27548 (E.D.N.Y. 2013))

In seeking the doctors' file, the Plaintiff seeks to evaluate the nature of the information considered by the administrator, whether the administrator was competent to evaluate the information in the Administrative Record, whether the doctors provided the administrator with an accurate and/or complete and/or fair evaluation of the Plaintiff's physical condition, so that the administrator had sufficient information to make a full and fair evaluation, whether the administrator should have sought information outside the administrative record, including further information and/or documentation from the above doctors, to reach a full and fair review of the Plaintiff's Long Term Disability Claim.  The Plaintiff cannot perform this evaluation without the entire doctors' files.

It is clear from a review of the discovery provided so far that the Defendant's physicians' opinions changed in response to pressure by the plan administrator to deny the Long Term Disability Claim after it had been granted and paid.  The physicians gave more weight to a few minutes of surveillance video, than hours of surveillance that supported Plaintiff's Long Term Disability, and than Plaintiff's treating physicians' opinions.

The discovery requested from the Defendant's doctors' files would demonstrate a reasonable possibility that the discovery will satisfy the good cause requirement for review.  (see *Trussel v. Cigna Life Ins. Co. of N.Y.,* 552 F. Supp.2d 387 (S.D.N.Y. 2008))

The doctors' files should reveal how long they spent reviewing the surveillance videos, what other materials they did or did not consider in their files, used in their determination of Plaintiff's eligibility for Long Term Disability Benefits and during the appeal process.  That part of the doctors' files that include the doctors' correspondence with Defendant as to Plaintiff's claim, their conclusions regarding Plaintiff's condition, and the basis for those conclusions, would all shed light on whether the doctors' reports submitted to the administrator were accurate, complete, and unbiased. It is likely that discovery of the doctors' files will uncover evidence demonstrating whether the administrator's decision was arbitrary and capricious.

A court may properly rely on discovery outside the administrative record to evaluate:

(i)     The exact nature of the information considered by the fiduciary in making its decision;

(ii)    Whether the fiduciary was competent to evaluate the information in the administrative record;

(iii)   How the fiduciary reached its decision; and

(iv)    Whether given the nature of the information in the record, it was incumbent upon the fiduciary to seek outside technical assistance in reaching a fair and full review of the claim.  (see *Burgio v. Prudential Life Ins. Co.,* 2009 WL 3128008 (E.D.NY.).

Plaintiff asks that the Court consider the well-reasoned statement that '[d]irect evidence of a conflict is <u>rarely likely to appear in any plan administrator's decision</u>". (See *Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 389 (3d. Cir. 2000) (emphasis added)) The absence of such direct evidence on the face of the record is a product of the insurers knowing that their conduct will be largely insulated from anything other than superficial scrutiny. This case is no different in that there is no "smoking gun" that appears on the face of record. Discovery is being sought in good faith to further develop evidence on these issues.

Well-reasoned decisions from the district courts support the view that a claimant should not be prevented from exploring the issue of the influence of an insurer's conflict of interest through discovery. See *Allison v. First Unum Life Ins. Co.,* 2005 U.S. Dist. LEXIS 3465 (E.D.N.Y. 2005) (permitting discovery, including depositions of medical personnel and documentation relating to claim procedures); *Anderson v. Sotheby's Inc. Severance Plan,* 2005 U.S. Dist. LEXIS 9033, (S.D.N.Y. 2005) (agreeing with <u>Allison</u>, and holding that requiring a claimant to provide a full good cause showing just to secure discovery would create a vicious cycle).

Evidence supporting a good cause showing for discovery on the issue of Aetna's conflict of interest includes, but is not limited to, the fact that Aetna's documentation to the medical reviewers that were retained by Aetna in connection with Mr. DeCesare's claim were provided "editorializations" of materials that were intentionally biased against Mr. DeCesare, as well as

the fact that Aetna changed its own view of Plaintiff's occupational requirements to suit its purpose during the pendency of the claim.   This is outlined as follows:

In a correspondence from Kelly Weirs, Aetna Senior Long Term Disability LTD claims analyst), dated December 29, 2010, (See **Exhibit O**)indicates that the Long Term Disability Policy provides coverage to Mr. DeCesare from June 28, 2009 for 24 months through June 27, 2011, under the short term disability "owed own occupation" definition under the policy.   Ms. Weirs recognized that after the first 24-months that a monthly benefit is paid under the policy, Mr. DeCesare would be deemed disabled "on any day if you are not able to work at any **reasonable occupation** solely because of disease or injury.

Despite this policy language, Ms. Weirs concluded that "in order to be entitled to LTD benefits after 06/28/2011, you must be considered disabled from "performing any gainful occupation", a term not found anywhere in the policy.   Ms. Weirs indicates that Aetna is reviewing the claim for benefits because of the change in the definition of disability, and that Aetna would consider, among other things:

- Your medical condition and how it may limit your ability to work on a regular basis;
- The skills and knowledge you gained from your education and past work experience;
- Your prior occupations; and
- Jobs you can perform based on your vocational and physical abilities.

Plaintiff is entitled to discovery, including any underwriting guidelines, to determine where these criteria came from, whether underwriting guidelines or otherwise, and on what basis Aetna changed the criteria for evaluation of Long Term Disability.

Despite the fact that Plaintiff's doctors, Dr. Wong and Dr. Dobrow affirmed that Mr. DeCesare's condition made him unable to return to work in either his past occupation or any

other reasonable occupations, whether full-time, sitting or standing, given his condition and his pain, (See **Exhibits Q** and **P**).   Aetna's Senior Technical Specialist, Teri Kili, sent each of Plaintiff's doctors a letter on November 29, 2011outwardly seeking to change their medical opinions.

By these November 29, 2011 letters (See **Exhibits S** and **T** attached to Barbara A. Matarazzo's Declaration),   Aetna sought to inquire from each doctor whether Mr. DeCesare was limited or restricted in his activities "of daily living" – something that is irrelevant to the issue of his inability to work at any reasonable occupation.   In this letter, Aetna's representative incorrectly noted, "Mr. DeCesare's occupation at the time of his disability is noted to be sedentary in physical demand," a statement that is inaccurate and intended to persuade Mr. DeCesare's doctors to change their opinion of his long term disability under the policy.

These letters requested that Mr. DeCesare's doctors re-assess Mr. DeCesare, given these false definitions contained in the letter that they complete a capabilities and limitations worksheet.   They contained yet another standard of Long Term Disability that was not in the policy – "Mr. DeCesare's inability to perform work at a light physical demand".

Failing to wait for a response from the doctors, Aetna's technical specialist concludes in this letter that if there is no response within 14 days, they will assume that non-response is "concurrence of our assessment and that Mr. DeCesare is capable of performing sedentary strength level occupation on a full-time basis." (See **Exhibits S** and **T**) Nowhere in the policy is this standard outlined, and nowhere was Mr. DeCesare ever advised, nor is it fair to conclude that if the doctors do not respond within 14 days, their non-response should be taken as "concurrence of Aetna's assessment".

In this November 29, 2011 letter from Aetna to each of Plaintiff's doctors, Aetna advised

Plaintiff's doctors that surveillance had been obtained over a 3 day period (September 28, 29 and

30, 2011).   Therein, Aetna mischaracterized not only the physical activities of Mr. DeCesare

depicted on the videotape, but also did not advise Plaintiff's doctors that during the hour long

video, taped of over 3 days, Mr. DeCesare is seen sitting over 25 minutes, almost half the tape,

and over the entire 3 day period, observed walking for only 20 minutes, bending for less than 1

minute, carrying a light paper bag for less than 30 seconds, lifting a wagon wheel for 8 seconds,

and standing for 10 minutes, mostly leaning on a column for support.

Clearly, Aetna, in the November 29, 2011 letter, sought to pressure Plaintiff's doctors

into changing their opinion and evaluation of Mr. DeCesare by incorrectly editorializing what is

seen on the video as follows:

> Surveillance video was obtained on September 28, 29 and
> 2011.   Mr. DeCesare was observed driving a motor vehicle,
> pruning a bush in his front yard, cutting tangled vines from a
> wagon wheel, carrying a large wagon wheel, ascending and
> decesnding 3 stairs several times without support, walking up and
> down an incline on the grass, walking without the assistance of
> cane, sitting in a chair for prolonged periods of time, twisting,
> bending and standing.   During the period of observation, Mr.
> DeCesare did not display any outward signs of difficulty in
> performing the above activities.  He was observed to wear a back
> brace, and utilized a cane on the date of his IME.   (emphasis
> added)

In this November 29, 2011 correspondence, Aetna characterized the surveillance which it

had obtained over the 3 day period in September and requested that Plaintiff's doctor provide an

addendum to their report so to encourage them to alter their opinion.  In this same letter dated

November 29, 2011, Aetna sought to alter its consideration of Mr. DeCesare's occupational

responsibilities by incorrectly stating Mr. DeCesare's occupation only required "voluntary

physical demand work, "physical demands of sedentary occupation", "work at a light physical demand".

The letters to Plaintiff's doctors editorialized Aetna's termination of benefits, including its surveillance findings, and advised Plaintiff's doctors that Aetna's doctor, Dr. Garvey, reviewed the video and concluded, "that there is no indication for permanent part-work restriction previously stated in my October 8, 2011 report: able to take break or to stand or walk after sitting for 1.5 to 2 hours (break to 10 to 15 minutes)". Dr. Garvey then concluded, "from this additional information provided that Mr. DeCesare is able to perform normal work activities, full duty, for an 8 hour work day with no restrictions".

By giving Plaintiff's doctors Dr. Garvey's changed conclusion, Aetna was intending to pressure Plaintiff's doctors into similarly changing their opinion of Mr. DeCesare's Long Term Disability qualifications by advising them that according to Aetna's doctor, the video caused her to change her opinion 180 degrees from that which it was 1 month prior.  None of this is proper if Aetna were truly acting as a "neutral claim arbiter."  If acting as a neutral claim arbiter, Aetna should not have acted in this manner, but rather should have simply requested an independent assessment from Plaintiff's doctors.

As a further example of Aetna's acting out of an influence of its conflict of interest, Aetna also sought to influence Plaintiff's doctor's opinions in the November 29, 2011 letter, by advising them that despite the fact that their prior letters noted that Mr. DeCesare reported he cannot sit for long periods of time, that he was in pain on both sides of his body that radiated to the lower right extremity, which lead to their conclusion that he was unable to work due to this injury; the November 29, 2011 letter outlined to Plaintiff's doctors that the Independent Medical Examination (performed on one of the dates of the video surveillance), performed by Dr.

Garvey, caused Dr. Garvey to conclude "after examining Mr. DeCesare, his is capable in performing sedentary physical demand work with restrictions of a four hour work day with a 10 to 15 minute break after sitting 1 ½ to 2 hours."

Aetna acknowledged in the November 29, 2011 letter its attempt to get its own doctor to change her opinion of Mr. DeCesare's Long Term Disability qualifications.  After noting that Dr. Garvey concluded that Mr. DeCesare could only perform sedentary work with restrictions on a 4 hour work day (clearly acknowledging not full-time) he could only sit for 1 ½ to 2 hours before requiring a 10 to 15 minute break, Aetna persuaded Dr. Garvey to change her opinion after allegedly showing her the 1 hour (over 3 day) surveillance tape.   Aetna advised Plaintiff's doctors, in the November 29, 2011 letter, that even Dr. Garvey, after reviewing the video tape, changed her opinion of Mr. DeCesare's inability to perform normal work activities, full duty for an 8 hour work day, with no restrictions.

On September 29, 2011, a day <u>during</u> the videotape surveillance, Defendant's doctor, Karen Garvey, concluded that Mr. DeCesare was not capable of performing normal work activities full time on an 8 hour work day, with restrictions.   However, after being provided the surveillance video and report, Dr. Garvey does a 180, and changes her opinion to suit Aetna's denial of benefits.  It is certainly not the manner in which a "neutral claim's examiner" conducts itself.

This is also further evidence that Aetna was influenced by its conflict of interest in wanting its own doctor to change her opinion, and then relying upon that changed opinion to persuade Plaintiff's doctors to similarly change their opinions, rather than giving Plaintiff the full and fair review of his claim that ERISA requires.

It appears that Dr. Garvey did not adequately consider all of the evidence when she rejected all of the Plaintiff's treating physicians opinions, nor did she objectively review the 3 day video of Plaintiff.  Clearly Dr. Garvey's assumption that Mr. DeCesare's performance of the tasks of walking (whether of 3 steps on the porch or down 3 steps on an incline), bending to pick up a cane or prune a bush, or even carrying a wagon wheel 6 steps, wheel an empty garbage pail 6 steps, for less 30 seconds on the video over a 3 day period, can translate to performing the same activities repetitively and continuously during a full 8 hour work day with no restrictions, is disingeniune. Had Dr. Garvey and Aetna done the required due diligence to review the video instead of assuming were was "symptom magnification of pain"  (See **Exhibit X**), Aetna would have no choice but to agree that the video clearly shows the physical difficulties and impairments which prevent Mr. DeCesare from performing the duties of a reasonable occupation.

The Plaintiff seeks discovery from Dr. Garvey and Dr. Garvey's files because it is apparent that Dr. Garvey must not have viewed the entirety of the videotape, and more likely took excerpts from the Research Consultant Group report of October 20, 2011 to put in her report.

The Research Consultant's Group Report is so highly prejudicial and editorialized, in addition to being inaccurate in its observations and conclusions, that Aetna's use of it by sending this editorialized version to Dr. Garvey, and to Plaintiff's doctors can be viewed as nothing less than an intent to pressure those doctors into changing their opinions of Mr. DeCesare's Long Term Disability.  The following is only a sampling of the prejudicial language contained in the Research Consultant Group Report of October 20, 2011:

- "We observed the claimant stepping outside to make phone calls and smoke cigarettes and <u>he did not show any signs of injury</u>."

- "He drove to the post office and returned home and also was observed walking down the block to the down town area on two occasions. <u>He used no ambulatory aides on this day</u>."

- "On Thursday, September 29, 2011, we observed the claimant coming outside with a woman and having coffee and cigarettes, <u>but he did not show signs of injury</u>." (See **Exhibit U** attached to Barbara A. Matarazzo Declaration).

Aetna failed to advise Mr. DeCesare that efforts to prove his entitlement to Long Term Disability benefits would be limited to the administrative record. Aetna, however, has continuously taken the position in this litigation to constrain the record for review by the Plaintiff and the court to the administrative record. In doing so, Aetna placed its own financial interest ahead of its obligations under ERSA to conduct an <u>independent review</u>. Rather, Aetna acted out of the influence of its financial conflict of interest.

Finally, with total predictability, on January 9, 2012, Aetna by Terri Kili, issued its Denial of Benefits letter to Mr. DeCesare sending same to the undersigned. (See **Exhibit X** attached to Barbara A. Matarazzo Declaration). In that letter, Aetna acknowledges that it's denial is based upon several documents including, Independent Peer Review Report completed by Dr. Robert Swotinsky on June 3, 2011, an Independent Medical Examination performed by Karen Garvey, M.D. on September 29, 2011, the video surveillance report dated October 20, 2011, with corresponding video for September 28, 29, and 30, 2011, an Employability Summary form and Capabilities and Limitation Work Sheet completed by Dr. Karen Garvey on September 29, 2011, the supplemental report in November 8, 2011 of Dr. Karen Garvey following her review of the surveillance video and report, the own occupation comparison report of Laurie Karickhoff Vocational Rehabilitation Specialist on December 28, 2011.

Further in that denial letter, Ms. Kili defines "reasonable occupation" as "this is any gainful activity for which you are; or may reasonable become fitted by: education training or experience and which results in or can be expected to result in an income of more than 60% of your adjusted pre-disability earnings." Ms. Kili does not state, then or now, where that definition came from, nor does Ms. Kili reference where she obtained the conclusion, "the occupation of AVP creative director of marketing is defined as light physical demand in the general economy", nor does Ms. Kili outline where she obtains her definition of "light physical demand occupation" outlined in the denial letter as:

> "light work-exerting up to 20 lbs. of force occasionally and/or up to 10 lbs. of force frequently and/or a negligent amount of force constantly when: activity or condition exists two-thirds or more of the time to move objects. Physical demand requirements are in excess of those for Sedentary Work. ....[work that] requires walking or standing to a significant degree...requires sitting most of the time; that entails pushing and/or pulling of arm or leg controls and/or ....requires working at a production rate pace entailing the constant pushing or pulling of materials even though the weight of those materials is negligible ...."

The finding that Mr. DeCesare could perform light physical demand work exhibits Aetna's inability to evaluate Mr. DeCesare'a Long Term Disability on an independent level, as the definition quoted by Ms. Kili in the denial letter is inconsistent with the policy, and Dr. Garvey's conclusion, in her changed opinion letter of November 8, 2011. This is certainly inconsistent with Dr. Garvey's conclusion on September 29, 2011, that Mr. DeCesare was only capable of performing sedentary physical demand work with restrictions for 4 hours a day, with a 10 to 15 minute break after sitting 1 ½ to 2 hours. It is apparent that the denial is based mainly on the surveillance video conducted on September 28, 29 and 30, 2011, the prejudicial surveillance video report, and Aetna's pressure put upon Dr. Garvey to change her medical opinion after providing her with the prejudicial video report since nothing in the video indicates

that Mr. DeCesare is or can perform their activities necessary in his job description for a full 8 hour work day, with no restriction, or any job description.

Finally, it is the antithesis of "independent" for Aetna to provide Plaintiff's doctors with a report that concludes, "there was no apparent physical impairment" exhibited in the video. Even the biased video Report acknowledges, "physical impairment, leaning on a column for support by Mr. DeCesare, using a column to step down from the porch, using a cane and back support, limping, uneven gated, relying on a cane and, walking very haltingly", among others.

## DISCOVERY REQUESTS AND RESPONSES

Attached hereto as **Exhibit C** is Plaintiff's Rule 34 Request for Production of Documents, and Defendant's Response thereto are attached as **Exhibit D**. Attached as **Exhibit E** is Plaintiff's Rule 33 Interrogatories, and Defendant's Response thereto are attached as **Exhibit F**.

It is significant to note that Aetna has refused to produce any documents beyond the Administrative Record. Aetna has maintained this position, despite several efforts by Plaintiff to articulate the sound basis for its entitlement to the sought after discovery.

Plaintiff has sought the deposition of an Aetna representative relating to Aetna's relationships with third party vendors that purportedly provided "independent" medical personnel involved with the claim and surveillance activities upon which Aetna so heavily relies. It is simply beyond comprehension that Defendant can blanketly assert that the doctors who perform high volumes of medical reviews on its behalf are "independent", and then refuse to provide documentation that may serve to support its conclusory assertions. As one example, Plaintiff has sought the complete files of Dr. Swotinsky and Dr. Garvey (request #10 and 11 in

Plaintiff's rule 34 demand). Aetna has objected to this information as not being relevant and states Aetna is ignorant of whether the doctors have notes or even files. Yet, Aetna will surely assert that they are "independent doctors."

Plaintiff seeks to obtain information about the number of medical and Independent Medical reviews that Dr. Swotinsky and Dr. Garvey have performed for Aetna. It is argued that information reflecting the frequency of usage of a purported "independent" doctor is highly relevant to the issues in this case, and is information that Plaintiff will utilize in assisting the trier of fact in determining whether Aetna had a conflict of interest and/or was truly "independent" in making its evaluation of Plaintiff's Long Term Disability.

## CONCLUSION

Based upon the foregoing, Plaintiff requested discovery should be granted.

Respectfully submitted,

LAW OFFICE OF BARBARA A. MATARAZZO, ESQ.
1025 Westchester Avenue
White Plains, New York 10604
*Attorneys for Plaintiff, Charles L. DeCesare*

By: _____
      Barbara A. Matarazzo, Esq. (BAM-8380)

TO:   Michael H. Bernstein, Esq.
      Matthew Paul Mazzola, Esq.
      Sedgwick LLP (NY)
      225 Liberty Street - 28th Floor
      New York, NY 10281
      (212) 422-0202
      Fax: (212) 422-0925
      michael.bernstein@sdma.com
      matthew.mazzola@sdma.com
      *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, Barbara A. Matarazzo, hereby certify that on July 10, 2013, a copy of the Plaintiff's

Memorandum of Law In Support of Motion to Compel Discovery, Declaration of Barbara A.

Matarazzo, and Exhibits in Further Support of Motion for Discovery was mailed via first class

mail, to the counsel listed below:

> Michael H. Bernstein, Esq.
> Matthew Paul Mazzola, Esq.
> Sedgwick LLP (NY)
> 225 Liberty Street - 28th Floor
> New York, NY 10281
> (212) 422-0202
> Fax: (212) 422-0925
> michael.bernstein@sdma.com
> matthew.mazzola@sdma.com
> *Attorneys for Defendant*

> LAW OFFICE OF BARBARA A. MATARAZZO, ESQ.
> 1025 Westchester Avenue
> White Plains, New York 10604
> *Attorneys for Plaintiff, Charles L. DeCesare*
>
> By: _____
>        Barbara A. Matarazzo, Esq. (BAM-8380)

23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Docket No.: 12cv7162

---

CHARLES L. DECESARE,

*Plaintiff,*

-against -

THE AETNA LIFE INSURANCE COMPANY, AND
THE DRESS BARN LONG TERM DISABILITY PLAN,

*Defendant.*

---

## PLAINIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO COMPEL DISCOVERY

**LAW OFFICE OF BARBARA A. MATARAZZO**
*Attorneys for Plaintiff, Charles L. DeCesare*
Office & P.O. Address:
1025 Westchester Avenue, Suite 402
White Plains, New York 10604
Tel.: (914) 346-8088
Fax: (914) 681-0013

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involved potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

Dated:_____                    Signature_____